WILLIAM A. RICHARDSON & others *vs.* CITY OF BOSTON.
SAME *vs.* SAME.

Suffolk. January 16, 1889. — February 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Tax on Real Estate — Payment under Protest — Recovery back — Abatement — Eminent Domain — Agreed Facts — Waiver*

Owners of real estate, including trustees with the legal title, properly taxed for it, are personally liable for the tax, and are not discharged by a subsequent taking thereof under the right of eminent domain.

An action to recover back the amount of a tax paid under protest, a part of which is legal, cannot be maintained, the only remedy being by an application for an abatement; and a submission of the case upon agreed facts reciting that the plaintiff is to recover if "not liable" for such illegal portion, is no waiver by the defendant, and confers no jurisdiction.

TWO ACTIONS OF CONTRACT, to recover back taxes paid under protest. The cases were submitted together to the Superior

Court, and, after judgment for the defendant, to this court, on appeal, on an agreed statement of facts, in substance as follows.

The taxes were assessed to the plaintiffs as trustees under the will of Samuel A. Way on May 1, 1883, upon estates situated on Mount Vernon Street and on Bowdoin Street in Boston, both of which were owned by the testator at the time of his death in 1872. The testator devised the Mount Vernon Street estate to his wife for life, and upon her death to their son, Charles G. Way, for his life, and all the residue of his property, including the Bowdoin Street estate and the remainder of the Mount Vernon Street estate, in trust to the plaintiffs, providing among other things that they should pay the taxes upon all real estate devised to his wife. The wife of the testator used and enjoyed the Mount Vernon Street estate from the time of his death until she died, on March 2, 1876. Charles G. Way survived her, succeeding to the enjoyment of the estate, and is still alive. The Bowdoin Street estate was rented, and the rents were collected by the plaintiffs, from the testator's death to May 25, 1883. The taxes upon both estates were assessed from 1872 to 1883 to the plaintiffs, who paid them, charging however the taxes paid on the Mount Vernon Street estate after 1876 to Charles G. Way. The Commonwealth, as provided by the St. of 1882, c. 262, duly took both the estates on May 25, 1883.

" If, upon the above facts, the court is of opinion that the said trustees were not liable for the taxes of 1883 upon the Mount Vernon Street estate," or if they were relieved from the payment of such taxes upon both estates by such taking, judgment was to be entered for the plaintiffs; otherwise, for the defendant.

*H. D. Hyde & W. A. Sargent*, for the plaintiffs.

*A. J. Bailey*, for the defendant.

HOLMES, J. These are suits to recover taxes for the year 1883, upon two estates taken by the Commonwealth on May 25, 1883, under St. 1882, c. 262. The legal title to one of them was in the plaintiffs as trustees under the will of Samuel A. Way, (*Miner* v. *Pingree*, 110 Mass. 47,) and as to the tax upon that one, the only question is whether the taking relieved the plaintiffs of liability. The taking, of course, put an end to the city's lien upon the land, and to its right to sell it. But as the taking was after May 1, the plaintiffs were not discharged if they

were personally liable for the tax under our statutes. *Kearns* v. *Cunniff*, 138 Mass. 434, 437. See Pub. Sts. c. 11, § 13; *Amory* v. *Melvin*, 112 Mass. 83, 87; *Hill* v. *Bacon*, 110 Mass. 387, 388. We are of opinion that they were so liable.

The Public Statutes provide remedies, "if a person refuses or neglects to pay his tax," first, by distress of goods (Pub. Sts. c. 12, § 8); next, by imprisonment (§ 14); finally, by action (§ 20). It is settled that the remedy by imprisonment applies to taxes on land. *Snow* v. *Clark*, 9 Gray, 190. The statutes plainly tell us that the remedy by distress also applies to such taxes. For, by § 23, a distress of cattle, etc., belonging to the owner of an estate taxed to another, is authorized "in the same manner as if such stock or produce were the property of the person so taxed," thus clearly assuming that the cattle of the person taxed may be distrained. The same conclusion follows from the fact that the remedy by imprisonment is only given when sufficient goods cannot be found to be levied upon (§ 14). *Lothrop* v. *Ide*, 13 Gray, 93. *Hall* v. *Hall*, 3 Allen, 5. *Snow* v. *Clark*, 9 Gray, 190. It seems to us very plain, that the third remedy, by action, is of equal scope, and that the words "when a person neglects to pay his tax" cannot be construed to exclude taxes on real estate in this section, when they are construed to include them in the others. It is to be remembered, also, that taxes on real estate are assessed, not to the estate, but "to the person" who is owner or in possession on May 1. Pub. Sts. c. 11, § 13.

The history of our legislation adverted to in *Sherwin* v. *Boston Five Cents Savings Bank*, 137 Mass. 444, if it cannot be said to furnish any stronger argument than is to be found in the plain words of the Public Statutes, at least leads to no different result. By the older statutes, the general remedy for refusal to pay any rate or tax was distress, and, in case of failure to find sufficient chattels for the levy, arrest. It applied to taxes on persons in respect of their land as plainly as to other taxes. Colonial Laws of 1672, (Whitmore's ed.) 24. Prov. Laws, 1692–93, c. 27, § 2, c. 28, § 6, c. 41, § 7; 1693–94, c. 20, § 17; 1698, c. 5, § 1 *ad finem;* 1699–1700, c. 26, §§ 13–15; 1730, c. 1, §§ 12–15; 1756–57, c. 11. St. 1785, c. 50, § 6; c. 70, §§ 2, 5, 8, 10, 14. Rev. Sts. c. 8, §§ 7, 11.

The power to sell real estate appears in Prov. Laws, 1731–32, c. 9, as the only available means for collecting taxes upon unimproved lands belonging to non-resident proprietors. Prov. Laws, 1735–36, c. 6; 1745–46, c. 9, etc. St. 1785, c. 70, § 7. St. 1794, c. 68. Rev. Sts. c. 8, § 19. It is then extended to the case of removing owners (St. 1785, c. 70, § 6), and to some cases of taxes assessed to persons in possession, but not owners (§ 15). But the last cited section makes it plain that the remedies by distress and arrest still apply to taxes for land, and are regarded as the general remedies, by the proviso that if the persons assessed shall remain on the estate nine months after the rate bill is committed to the collector, " the said collector shall have no other remedy than against the person or property of the person or persons assessed as aforesaid, unless," etc. Distress and arrest for taxes on land are expressly provided for also by § 10.

In Rev. Sts. c. 8, § 18, the lien for taxes on real estate has become general; but again it is made plain that the lien does not exclude the remedies formerly available, not only by § 16, corresponding to Pub. Sts. c. 12, § 23, already discussed, but by § 19, which provides that, when a tax on real estate shall be assessed to a non-resident owner, " the collector may, at his election, collect such tax of the said owner, in like manner as in the case of a resident owner, or he may collect the same by the sale of such real estate." As was said by Shaw, C. J., of the lien created by one of the annual tax acts which led to § 18 of the Revised Statutes : " It is a remedy superadded to those of demand, distress and imprisonment; and could not have been expected to be resorted to until other means and remedies had failed." *Hayden* v. *Foster*, 13 Pick. 492, 495. The tax acts which led to Rev. Sts. c. 8, § 18, are as follows : St. 1821, c. 107, § 9 (February 23, 1822), as to lien in Boston; St. 1822, c. 108, § 9 (February 11, 1823), Boston; St. 1823, c. 133, § 9 (February 21, 1824), lien made general; St. 1829, c. 27, § 8 (June 12, 1829); St. 1829, c. 86, § 8 (March 9, 1830); St. 1830, c. 151, § 8 (February 28, 1831).

An exceptional personal liability was imposed by Prov. Laws, 1761–62, c. 16; St. 1785, c. 46, § 10. A right of action for rates was given to the constables or collectors in case of death or

removal of the person "duly rated," or of her marriage, being a woman, before payment. St. 1789, c. 4. The words "duly rated" embrace the taxes on real estate. Rev. Sts. c. 8, § 15, adopt this act without change. *Rich* v. *Tuckerman,* 121 Mass. 222. And by St. 1859, c. 171, the latter section was "extended to all cases in which taxes committed to a collector have remained unpaid for one year after such commitment," and this has been the law ever since. Gen. Sts. c. 12, § 19. Pub. Sts. c. 12, § 20. If, as we think, it is plain that the giving of a lien upon real estate did not displace the earlier remedies of distress and arrest, we can perceive no reason why the existence of such a lien should cut down the absolute generality of the words of the act of 1859. We therefore are of opinion, as we have said, that owners of real estate, properly taxed for it, are personally liable for the tax. See *Sherwin* v. *Boston Five Cents Savings Bank,* 137 Mass. 444 ; *Cochran* v. *Guild,* 106 Mass. 29, 30 ; *Burr* v. *Wilcox,* 13 Allen, 269, 272 ; *Wilson* v. *Shearer,* 9 Met. 504, 506 ; *Sherwin* v. *Wigglesworth,* 129 Mass. 64.

As the plaintiffs were personally liable as of May 1, and as the failure actually to assess and to collect the tax on that day does not affect their legal position, it has not been argued that, if they had paid them, they could have recovered, as on a partial failure of the consideration of the tax. No such argument could prevail. The plaintiffs, if they have been deprived of their land, have the price paid them in its place, untaxed for the current year. Moreover, when a personal liability is imposed, it might be difficult to say that the consideration of the tax is solely the protection of the particular parcel of land, although the lien is confined to that. *Jennings* v. *Collins,* 99 Mass. 29, 32. *Hayden* v. *Foster,* 13 Pick. 492.

In the other suit, Charles G. Way had a life estate in possession at the date of the tax, and the plaintiffs had only a remainder in fee. We are content to assume, for the purposes of this case, that the tax should have been assessed to Charles G. Way, notwithstanding the plaintiff's acquiescence in the present mode of taxation for several years. *Boston Water Power Co.* v. *Boston,* 9 Met. 199, 203, 204. But as the plaintiffs were also assessed for the first-mentioned estate, and as that portion of the assessment was legal, their only remedy was by a petition for abate-

ment.  Pub. Sts. c. 11, § 69.  *Boston Water Power Co.* v. *Boston,*
9 Met. 199.  *Osborn* v. *Danvers,* 6 Pick. 98.  *Howe* v. *Boston,*
7 Cush. 273.  *Lincoln* v. *Worcester,* 8 Cush. 55.  *Bourne* v. *Boston,* 2 Gray, 494.  *Chapel of the Good Shepherd* v. *Boston,* 120
Mass. 212, 214.  *Oliver* v. *Lynn,* 130 Mass. 143.  The case is be-
fore us on agreed facts ; but that circumstance does not give
the court jurisdiction.  The facts were agreed in *Oliver* v. *Lynn.*
It is suggested that the defendant has waived the point by the
form of the agreement, that if the " trustees were not liable " for
the tax, etc., judgment should be entered for the plaintiffs.  We
are satisfied that the defendant did not use the language with
that meaning, and therefore, if necessary, should discharge the
agreement rather than enter judgment for the plaintiffs.  Agreed
facts are not to be dealt with on quite the same principles as
contracts.  But as the plaintiffs expressed no wish that the agree-
ment should be discharged if their construction was not adopted,
and as we do not perceive how they could better their case, we
construe the agreement as meaning, simply, if the plaintiffs are
not liable although assessed as above stated and although they
had brought no petition for abatement, or if the plaintiffs were
entitled to recover.              *Judgment for the defendant.*