I think the tax in this case, or at least a considerable portion of it, was improperly imposed and should have been revised and readjusted by the comptroller upon the petition of the relator. I will state only very briefly my reasons for this conclusion.
(1) The tax can be imposed only under the authority of chapter 118 of the Laws of 1901. The relator is a domestic corporation and within the general scope of the statute, but the question is how and to what extent the tax can be lawfully imposed. It has been imposed upon the receipts of the company derived from past transactions and pre-existing contracts. The statute designates the burden as one "for the privilege of exercising corporate franchises," and, consequently, it can be laid only upon such business as depended upon the exercise of such franchise. It could not have been lawfully imposed upon the receipts of past contracts that the company had the right to collect and enforce by virtue of the contract alone and that did not depend upon the exercise of the franchise. These contracts would survive the destruction of the franchise by the dissolution of the corporation. The collection by the company of the premiums upon insurance contracts entered into before the enactment of the statute was not the exercise of a franchise privilege, but depended upon an absolute and indestructible contract right. The tax is purely a franchise tax and nothing else as to domestic corporations. The tax imposed "for carrying on business in their corporate or organized capacity" applies only to foreign corporations deriving their franchises from other sovereignties. The statute went into effect October 1st, 1901. There is nothing in the statute that warrants the imposition of the tax upon premiums derived from contracts made prior to that date and upon every principle of justice and sound construction the tax could be imposed only upon future business. If these contracts would survive the destruction of the franchise, as they clearly would, and be good without it, then the tax in question does not reach them unless it is made to operate retroactively, and every fair intendment is against such construction. *Page 230 
The tax in question being a franchise tax does not, within the terms of the statute, or by any reasonable construction, become a burden upon contracts made before the law was enacted and that exist and may be enforced entirely independent of the corporate franchise. Contracts of life insurance once made exist solely by virtue of the right to contract at the time they were entered upon by the parties, and not by virtue of any privilege or franchise from the state. (People v. O'Brien, 111 N.Y. 1.) When a corporation merely does what it has the right to do without the consent of the state it is not in any legal or proper sense exercising a franchise, and hence past transactions are not within the scope of the statute, since effect can be given to all of its provisions by limiting its operations to future transactions.
(2) The statute under which the tax was imposed had no existence until October 1st, 1901. It speaks only from that day, and of future transactions of the company. That was the day on which the statute commenced to operate upon the relator, and no tax can be imposed upon any business transacted prior to that day. The statute is not in terms retroactive, but clearly prospective in its operation. No law can properly be held retroactive unless so expressed. In the absence of such clear declaration laws operate only in the future and upon future transactions. If there was no other guide the first day of October, 1901, was the day fixed by the statute for the relator to commence to pay. (People ex rel. Mutual Trust Co. v.Miller, 177 N.Y. 51.) But by plain implication the legislature fixed that day three months after the law went into operation; that is to say, on January 1st, 1902, since it provided for an annual tax calculated for the calendar year. The calendar year referred to in the statute must necessarily mean the first calendar year occurring after the law took effect; that is to say, the year 1902. The calendar year 1901 could not have been intended, since that would make the law retroactive — a construction that is always avoided, unless clearly expressed — and the tax would react on the privilege during nine months when no law for taxing the relator was *Page 231 
in existence. The first calendar year, therefore, for which the tax was to be imposed was the year commencing January 1st, 1902. Thus construed the law is clear, natural and not violative of any principle of law or equity applicable to the exercise of the taxing power.
The order should be reversed and the account remitted to the comptroller for revision and correction, limiting the tax to new policy premiums commencing with those collected during the calendar year 1902, with costs to appellant.